# EXHIBIT A



# MIAMI-DADE COUNTY CLERK OF THE COURTS
## HARVEY RUVIN

Contact Us     My Account

---

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK



**FRANCESCO LEFEBVRE D'OVIDIO VS ROYAL CARIBBEAN CRUISES LTD**

| | | | |
|---|---|---|---|
| Local Case Number: | 2022-009415-CA-01 | Filing Date: | 05/23/2022 |
| State Case Number: | 132022CA009415000001 | Judicial Section: | CA44 |
| Consolidated Case No.: | N/A | Case Type: | Business Transactions |
| Case Status: | OPEN | | |

## 👥 Parties
Total Of Parties: 2

| Party Description | Party Name | Attorney Information | Other Attorney(S) |
|---|---|---|---|
| Plaintiff | Lefebvre d'Ovidio, Francesco | B#:  (Bar Number)125891  N: (Attorney Name)Goldfarb, Carl E | |
| Defendant | Royal Caribbean Cruises Ltd | | |

## 🔧 Hearing Details
Total Of Hearings: 0

| Hearing Date | Hearing Time | Hearing Code | Description | Hearing Location |
|---|---|---|---|---|

## 📡 Dockets
Total Of Dockets: 3

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 4 | 05/25/2022 | | Receipt: | Event | RECEIPT#:3090117 AMT PAID:$401.00 NAME:GOLDFARB, CARL E 401 E LAS OLAS BLVD FL 12 FORT LAUDERDALE FL 33301-2210 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:EFILINGS TENDER AMT:$401.00 RECEIPT DATE:05/25/2022 REGISTER#:309 CASHIER:EFILINGUSER |
| 📄 | 2 | 05/23/2022 | | Complaint | Event | |
| 📄 | 1 | 05/23/2022 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



## HARVEY RUVIN

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2022 Clerk of the Courts. All rights reserved.



**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
COMPLEX BUSINESS LITIGATION DIVISION**

Francesco Lefebvre d'Ovidio,

        *Plaintiff,*

v.

Royal Caribbean Cruises, Ltd.,

        *Defendant.*

Case No. _____

**COMPLAINT AND DEMAND FOR
JURY TRIAL**

_____

1.      Plaintiff Francesco Lefebvre d'Ovidio ("Francesco Lefebvre" or "Plaintiff"), by and through his undersigned counsel, brings this action against Royal Caribbean Cruises, Ltd. ("Royal Caribbean" or "Defendant").

**PRELIMINARY STATEMENT**

2.      This case arises out of Royal Caribbean's role in a scheme to wrongfully divest Francesco Lefebvre of his majority share of the cruise line Silversea Cruise Holding Ltd., its subsidiaries, and its assets ("Silversea").

3.      In or around 2001, Francesco and Manfredi Lefebvre—Plaintiff's brother—had a dispute concerning a number of assets in which they and other Lefebvre family members have ownership interests.  At the time, Francesco held a 51.6% interest (and, with his wife, a 52.12% total interest) in Eurosecurities Corp., S.A. ("Eurosecurities"), a holding company that owned Silversea.  In connection with that dispute, Francesco and Manfredi entered into a settlement agreement (the "Settlement Agreement").

4.      The Settlement Agreement, among other terms, required Francesco to transfer to Manfredi (or an entity of his choosing), Francesco's ownership interest in Eurosecurities (and thus

Silversea).  In return, among other obligations, Manfredi was required to (i) transfer to Francesco a 48% percent interest in an entity named COIMAR s.p.a. ("COIMAR"), which would have provided Francesco a 100% interest in COIMAR (he already held a 52% interest in COIMAR); and (ii) cause Eurosecurities and related entities to waive any claims they had against COIMAR or its directors.

5.     The Settlement Agreement identified Manfredi's foregoing obligations as "essential obligations" in addition to certain of Francesco's obligations.  The Settlement Agreement expressly provided that the Settlement Agreement could be terminated if either party failed to perform any of their respective "essential obligations."

6.     On June 11, 2001, Francesco transferred the Eurosecurities shares that reflected his 52.12% interest in the company and its holdings to an entity designated by Manfredi, pursuant to the Settlement Agreement.  Manfredi, however, refused to perform his "essential" obligations under the Settlement Agreement.

7.     As a result, in 2008, Francesco terminated the Settlement Agreement and filed a lawsuit in Italy (the "Italy Action") seeking an order declaring the Settlement Agreement (and any transfers pursuant thereto) void *ab initio* and requiring Manfredi to transfer back to Francesco all interests and assets that he had previously transferred to Manfredi pursuant to that agreement.

8.     Manfredi had dissolved Eurosecurities in the meantime and, instead of complying with his obligations to return the stock and related assets that he had wrongfully converted, he undertook a series of inter-entity transfers of Silversea capital stock and assets that had no legitimate business purpose, and were intended to hide the Silversea stock and assets and to obstruct Francesco's ability to recover those shares and assets, while preserving Manfredi's control over them.

2

9.      On June 21, 2018, the Supreme Court of Italy issued an order (the "Supreme Court Order") in Francesco's favor that (i) overturned a previous Court of Appeal's decision that had been in favor of Manfredi; (ii) overwhelmingly rejected Manfredi's claims that he had fulfilled his obligations under the Settlement Agreement and that it (and Francesco's transfers pursuant thereto) remained valid; and (iii) directed the Italian Court of Appeal to decide the case consistent with the Supreme Court Order.

10.      Instead of complying with his obligations, Manfredi negotiated the sale of all of Silversea's capital stock and assets to Royal Caribbean, including the Silversea capital stock that Francesco had transferred to Manfredi pursuant to the Settlement Agreement.

11.      Manfredi pursued this potential transaction with Defendant with an intent of hindering Francesco's ability to obtain restitution of the Silversea stock and assets by removing them from Manfredi's possession and by converting a relatively illiquid asset—the Silversea stock and assets—into cash, which could be more easily transferred and concealed.

12.      In July 2018, Francesco's counsel spoke and exchanged correspondence with Royal Caribbean's counsel before it closed on its acquisition of Silversea.  Francesco (i) provided Royal Caribbean a copy of the Supreme Court Order and his pleading underlying that order, (ii) explained the facts and circumstances surrounding Francesco's rightful ownership and control of Silversea, (iii) objected to Royal Caribbean moving forward with the transaction, and (iv) warned Royal Caribbean repeatedly that Manfredi did not own all of the stock and assets that he was purporting to sell.

13.      Despite its knowledge that Manfredi did not own the Silversea stock and assets, and that Plaintiff was the rightful owner, Royal Caribbean proceeded with its acquisition of the stock and assets.  On July 31, 2018—just five weeks after the Supreme Court Order was issued—

3

Royal Caribbean closed on a transaction with Manfredi to obtain 67.7% of Silversea's capital stock along with its assets, and obtained the remaining 33.3% two years later, on July 9, 2020 (the "Silversea Transfers"). All along, Royal Caribbean has rejected Francesco's entitlement to his 52.12% share of Silversea.

14.      Francesco thus brings this action to ensure that he is able to achieve full restitution despite Royal Caribbean's and Manfredi's efforts to prevent him from doing so and to hold Royal Caribbean to account for its unlawful acquisition of Francesco's assets.

## THE PARTIES

15.      Francesco Lefebvre d'Ovidio is an individual citizen of Italy, residing in Rome, Italy.

16.      Royal Caribbean is a corporation organized and existing under the laws of the Republic of Liberia, with its principal place of business in Miami, Florida.

## JURISDICTION

17.      This Court has jurisdiction pursuant to Section 26.012, Florida Statutes. Pursuant to Administrative Order No. 17-11, this case is subject to mandatory assignment in the Complex Business Litigation Division because the amount in controversy exceeds seven hundred and fifty thousand and 00/100 dollars (USD 750,000), exclusive of interest, costs and attorneys' fees.

18.      The Court has personal jurisdiction over Royal Caribbean, pursuant to Section 48.193(2), Florida Statutes, because Royal Caribbean engages in substantial and not isolated activity within this state.

19.      The Court also has personal jurisdiction over Royal Caribbean pursuant to Section 48.193(1)(a), Florida Statutes, because the causes of action in this Complaint arise from Royal

Caribbean's operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, or committing a tortious act within this state.

## VENUE

20.     Venue is proper in Miami-Dade County, Florida pursuant to Section 47.011 and 47.051, Florida Statutes, because Royal Caribbean resides or conducts business in Miami-Dade County, the cause of action accrued in Miami-Dade County, and/or a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in Miami-Dade County.

## FACTUAL ALLEGATIONS

### I.     The Settlement Agreement

21.     In 1998, Francesco Lefebvre was the majority owner of Eurosecurities Corp, S.A. (Eurosecurities), a Luxembourg holding company.  Other shareholders in Eurosecurities included Francesco's sister, Elvira Lefebvre, and his mother, Eugenia Beck.

22.     Eurosecurities owned shares in various other companies.  Those ownership interests included 100% of the shares of Silversea Holding Ltd.  Silversea Holding Ltd. wholly-owned its direct subsidiary Silversea Cruises Holding Ltd. and its indirect subsidiary, Silversea Cruises Ltd.  Silversea Holding Ltd. also owned other assets, including cruise ships.

23.     On December 22, 1998, the Lefebvre family entered into a merger agreement (the "Family Merger Agreement").  Among other terms, the Family Merger Agreement provided that the parties would transfer to a new company named Lefco Ltd. (Bahamas) ("Lefco"): (i) 100% of the shares of Eurosecurities (together with all of its subsidiaries and assets); and (ii) 100% of the shares of an entity named Befco Holding S.A.  The Family Merger Agreement provided that each of Francesco and Manfredi Lefebvre (who was then not a shareholder of Eurosecurities) would

have indirect 31% interests in Lefco, Eugenia Beck would have an indirect 24% interest in Lefco, and Elvira Lefebvre would have a 14% interest in Lefco.

24.     Before the definitive documents for the Family Merger Agreement were executed, however, Francesco Lefebvre and Manfredi Lefebvre had a dispute.   As a result, Francesco declined to move forward with the Family Merger Agreement and offered instead to find a different path forward for the family's assets.

25.     In response, Manfredi initiated an arbitration against Francesco, as well as other lawsuits in Italy and Luxembourg, the purpose of which were to frustrate Francesco's ability to manage Eurosecurities and Silversea, causing significant harm to those entities.

26.     On May 30, 2001, Francesco and Manfredi entered into a settlement agreement (the Settlement Agreement), which the other Lefebvre family members also executed.

27.     The key terms of the Settlement Agreement included:

A.  The Family Merger Agreement was terminated;

B.  Francesco agreed to transfer 52.12% of Eurosecurities to Manfredi or to an entity indicated by him;

C.  Manfredi agreed to cause Eurosecurities to transfer to Francesco certain assets owned and/or controlled by Eurosecurities including:

    i.   Causing Elite Merchant Ltd. to transfer its 48% interest in COIMAR s.p.a.;

    ii.  Transferring ownership of a building in Rome, Italy (in exchange for an entity of Francesco's designation paying 10 billion Lira for the building);

    iii. Transferring a 100% interest in a company named San Giorgio Immobiliare s.r.l., an owner of property near Rome, Italy; and

    iv.  Transferring a 100% interest in a company named ZUKI, s.r.l., an owner of another property near Rome, Italy.

D.  Manfredi also agreed to:

    i.   Transfer all rights and claims that Eurosecurities or Elite Merchant Ltd. possessed against COIMAR or its shares to Francesco;

    ii.   Cause those entities to waive any such rights and claims; and

    iii.   Waive and settle any claims that Eurosecurities or any of its subsidiaries (including a company named Sitav S.p.A. ("Sitav")) had against Francesco or any of those entities' other directors, including in connection with any pending proceedings.

28.      Each of the obligations that Manfredi had agreed to were material to the Settlement Agreement.  For instance, before the Settlement Agreement, Francesco owned 52% of COIMAR.  Manfredi's obligation to transfer 48% of COIMAR would therefore provide Francesco a 100% ownership interest in COIMAR.  At the time, COIMAR possessed assets valued at approximately €80 million, but Eurosecurities had potential claims against COIMAR that could have been valued at approximately €137 million.

## II.    Plaintiff Transfers the Silversea Shares and Assets to Manfredi, but Manfredi Refuses to Perform under the Settlement Agreement

29.      On June 11, 2001, Francesco transferred his and his wife's collective 52.12% interest in Eurosecurities (and thus Silversea) to Manfredi.

30.      Manfredi, however, refused to perform at least three material obligations he had under the Settlement Agreement:  (1) Manfredi did not transfer (or cause to be transferred) the 100% interest in Elite Merchant Ltd. (and thus the 48% interest in COIMAR); (2) Manfredi did not transfer (or cause to be transferred) the rights and claims that Eurosecurities had against COIMAR or cause Eurosecurities to waive any such rights; and (3) Manfredi did not waive potential claims that a Eurosecurities affiliate, Sitav, purported to have against Francesco, or cause Sitav to waive such claims.

31.      In addition, not only did Manfredi fail to perform these obligations, but he caused Eurosecurities entities to continue to prosecute claims against Francesco.  Those claims included Sitav's alleged claims against its former directors, including Francesco, in which Sitav sought approximately €16 million in damages.  In 2002, Manfredi caused Sitav to file a lawsuit asserting

those claims and sought an order freezing Francesco's real estate assets.  In 2007, the Court of Rome dismissed Sitav's claim, finding that it was a meritless attempt by Manfredi to harm Francesco.  However, Manfredi caused the claim to be transferred from Sitav to another company he controls, named Felsted, to appeal that decision.  In another instance, in July 2007, Manfredi caused an entity he controls named Vera Limited to initiate a lawsuit in the Court of Rome on behalf of Eurosecurities and against COIMAR asserting €137 million in damages and seeking an additional €50 million in interest.  These were exactly the types of claims that Manfredi had already expressly agreed to release in the Settlement Agreement.

32.     Each of the obligations that Manfredi failed to perform were identified as "essential obligations" in the Settlement Agreement and their collective monetary value exceeded €200 million.  The Settlement Agreement expressly provided that it could be terminated based on a party's failure to perform any of the obligations that had been identified as "essential."

33.     On January 29, 2008, accordingly, after Manfredi caused Felsted and Vera Limited to pursue claims against COIMAR and Francesco in violation of the Settlement Agreement, Francesco notified Manfredi of the termination of the Settlement Agreement due to Manfredi's failure to perform his essential obligations under that agreement.

34.     On February 29, 2008, Francesco filed a lawsuit against Manfredi in the Civil Court of Bologna (the Italy Action) seeking an order under Italian law (i) finding that Manfredi had not fulfilled some of his "essential" obligations under the Settlement Agreement; (ii) finding that the Settlement Agreement and his transfer of his 52.12% interest in Eurosecurities (and thus Silversea) was therefore void *ab initio*; (iii) ordering restitution in the form of Manfredi returning to Francesco his 52.12% interest in Silversea plus the value of the other assets that Francesco

transferred to Manfredi pursuant to the Settlement Agreement[1]; and (iv) in the alternative, ordering Manfredi to pay to Francesco the value of Francesco's 52.12% interest in Eurosecurities, plus the value of the other assets that Francesco transferred or (caused to be transferred) to Manfredi pursuant to the Settlement Agreement.

35.     In the meantime, Manfredi undertook a series of transfers to insulate the Silversea stock and assets from Francesco's efforts to obtain restitution.  For example, under the Settlement Agreement, Manfredi designated Triani Corp. S.A. (Luxembourg) ("Triani") as the entity to which Francesco should cause the Eurosecurities shares to be transferred.  Triani was a shell company under Manfredi's control that had no assets.  Shortly after Triani received the Eurosecurities shares on or around June 11, 2001, it transferred them to a Panamanian company named Despina Trading S.A. (Panama) ("Despina").  Manfredi controlled Despina.  Its Director, Treasurer, and Secretary was Georgio Scelsi, an employee of Manfredi.

36.     On May 5, 2004, Eurosecurities Corp. S.A. was liquidated and dissolved and an entity named Vera Limited was appointed as its liquidator.  The director of Vera Limited was an entity named Bahamatex Ltd.  In 2009, after Francesco terminated the Settlement Agreement and initiated the Italy Action, Manfredi and his sister Elvira Lefebvre entered into an agreement whereby an entity they controlled—Elle Group (Bahamas)—would become the owner of the Silversea entities.  Manfredi then caused Elle Group (Bahamas) to transfer its legal domicile to Switzerland and to become Elle Group S.A. (Lugano), which continued to own Silversea. Manfredi possessed a 67% controlling interest over Elle Group (in its Bahamian and Swiss forms) indirectly   through   a   trust   called   EMME   TRUST   and   a   holding   company   named

---

[1] As noted below in Paragraph 36, Eurosecurities was liquidated and dissolved in 2004.  As a consequence, the shares in the Eurosecurities subsidiaries—including Silversea—were transferred to other entities controlled by Manfredi. Francesco therefore seeks the return of his share of Eurosecurities' assets, including his 52.12% share of Silversea.

HOLDINGEMME.  Elvira held the remaining 33% interest through a trust named ELLE TRUST and a holding company named HOLDINGESSE.

37.    None of these transactions had a legitimate business purpose.  None of these transfers were made in exchange for reasonable consideration and all of them were transfers between entities controlled by Manfredi himself.  The purported "trusts" that controlled Silversea had the same trustee—SG Services—which had no offices, no employees, and was owned and managed by Giorgio Scelsi—the same individual that had operated Despina and, again, an employee of Manfredi.  These transfers thus amounted to a shell game where Manfredi—without any legitimate business purpose—moved the Silversea shares and assets into entities that were increasingly remote, making it increasingly difficult for Francesco to recover them and obtain restitution.

38.    Sometime prior to July 31, 2018, Manfredi again caused the Silversea shares and assets to be transferred yet again, this time to an entity named Heritage Cruise Holding Ltd. f/k/a Silversea Cruises Group Ltd. ("Heritage").  Manfredi controlled Heritage through his trust after he had merged Heritage with Elle Group, the prior owner of Silversea.

### III.      The Supreme Court of Italy Issues an Order Favoring Plaintiff's Ownership of Silversea but Manfredi and Royal Caribbean Deprive Plaintiff of His Interest

39.    During the time Manfredi was going to great lengths to conceal the Silversea shares and assets from Francesco, the Italy Action was progressing.  On January 8, 2015, the Court of Appeal of Bologna issued a decision finding that Manfredi had fulfilled his obligations under the Settlement Agreement, that the Settlement Agreement thus remained valid, and Francesco was therefore not entitled to restitution of his shares in Eurosecurities or their value.

40.    On June 21, 2018, however, the Supreme Court Order was issued and it (i) reversed the decision of the Court of Appeal; (ii) overwhelmingly rejected Manfredi's claims that he had

fulfilled his obligations and that the Settlement Agreement remained valid and (iii) directed the Italian Court of Appeal to decide the case consistent with the Supreme Court's ruling.

41.     The Italian Court of Appeal will decide the case by complying with the Supreme Court decision.  As a result, it is essentially a foregone conclusion that, given the stringent limits imposed by the Supreme Court, the Italian Court of Appeal will issue a final judgment finding that (i) Manfredi did not comply with some of his essential obligations and (ii) the Settlement Agreement and Francesco's transfers pursuant thereto were therefore void *ab initio* and Francesco was, and always has been, the legitimate owner of 52.12% of Eurosecurities and thus, the legitimate owner of 52.12% of Silversea with the power to control Silversea and its assets or, alternatively, that he is entitled to the monetary value of that stock plus accrued revenues and interest, which exceeds €800 million.

42.     Again, rather than complying with his obligations, Manfredi entered into negotiations with Royal Caribbean concerning a potential transaction whereby Manfredi would cause Heritage to transfer the Silversea stock and assets to Royal Caribbean and away from Francesco.

43.     Manfredi pursued this transaction while the Italy Action was pending and even after the Supreme Court Order was issued on June 21, 2018.  The transaction presented strategic benefits to Manfredi: it would (i) frustrate Francesco's claim for restitution by removing those assets from Manfredi's possession or control; and (ii) convert relatively illiquid assets—the Silversea capital stock and assets—into more liquid assets, including cash, that could be more readily transferred and concealed so as to obstruct and frustrate Francesco's judgment enforcement efforts.

44.     After learning of that potential transfer, Francesco repeatedly told Royal Caribbean that Manfredi and Heritage did not own the stock and assets they were purporting to be able to transfer to Royal Caribbean and that the stock and assets were subject to restitution to Plaintiff.

45.     On July 20, 2018, for instance, Plaintiff's counsel at Foley & Lardner LLP spoke by telephone and email with Royal Caribbean's counsel at Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), notifying them of the Italy Action and the Supreme Court Order ruling in favor of Plaintiff's ownership of Silversea and his claim for restitution.

46.     On the same date, Francesco's counsel spoke by telephone and email with Manfredi's counsel in connection with the potential Royal Caribbean transaction.  Manfredi's counsel falsely claimed that the Italy Action concerned only monetary relief.   In fact, as Francesco's counsel explained, he was the rightful owner of 52.12% of Silversea and its assets and was seeking, through the Italy Action, the restitution of those shares and the related assets.

47.     On July 22, 2018, Francesco's counsel spoke to Royal Caribbean's counsel and again informed them about (i) Francesco's ownership of and claim for restitution of Silversea's stock and assets; (ii) Manfredi's partial ownership in the stock and assets and his unlawful efforts to gain complete control of Silversea; and (iii) the Supreme Court Order's rejection of Manfredi's claims.

48.     On July 27, 2018, Francesco's counsel emailed Royal Caribbean's counsel to once again notify them of his ownership interest in Silversea.  Francesco's counsel also provided Royal Caribbean's counsel a copy of the pleading underlying the Italy Action, which detailed the facts establishing Francesco's ownership interest in Silversea and Manfredi's unlawful attempts to divest him of those interests.

49.     By July 27, 2018, accordingly, Royal Caribbean knew that Manfredi was trying to transfer and assert control over stock and assets that he did not own, knew that those assets were subject to restitution to Francesco, and knew that Manfredi was attempting to transfer them in view of a substantial debt to Francesco he would be incurring.

50.     Nevertheless, in the face of those facts, Royal Caribbean acted in concert with Manfredi to transfer Silversea's capital stock and assets away from Plaintiff (the "Silversea Transfers").  Manfredi and Royal Caribbean knew that the Supreme Court Order meant that he faced a substantial debt to Francesco and would be forced to transfer those shares to Francesco in recognition of his rightful ownership of 52.12% of Silversea.

51.     Accordingly, on July 31, 2018, Royal Caribbean purported to acquire 66.7% of the capital stock of Silversea and all its assets from Heritage and undertook the obligation to acquire the remaining 33.3% at a later date, notwithstanding its knowledge of (i) the facts and circumstances underpinning Francesco's ownership of 52.12% of Silversea; (ii) Manfredi's failure to perform essential obligations pursuant to the Settlement Agreement; and (iii) the June 21, 2018, order of the Italy Supreme Court reversing the Court of Appeal's decision in favor of Manfredi, thus making clear that Manfredi would be forced to transfer the Silversea shares back to Francesco. On July 9, 2020, Royal Caribbean purported to acquire the remaining 33.3% of the capital stock of Silversea from Heritage.  In addition, Royal Caribbean agreed to transfer to Manfredi certain Royal Caribbean stock interests as part of the Silversea Transfers.  Those transfers are not complete or remain subject to contingencies, at least in part.

52.     Manfredi thus fraudulently transferred the Silversea stock and assets and removed those assets from his possession or control in an attempt to avoid Francesco's enforcement of a judgment against him.  Royal Caribbean thus knowingly acquired possession of property that

Manfredi did not legally possess, has derived substantial revenues from that property to which Francesco is entitled, and has steadfastly rejected and refused to acknowledge Francesco's entitlement to that property and the rights and benefits that flow from it.  Manfredi and Royal Caribbean will continue to fraudulently possess and benefit from the Silversea stock and assets unless and until there is an injunction and/or order of attachment that prevents the dissipation of those assets.

53.     Francesco will suffer irreparable harm if Royal Caribbean dissipates, transfers, or encumbers the Silversea capital stock or assets.  Francesco would be prevented from enforcing a judgment for restitution of those assets.  Royal Caribbean would be positioned to dissipate those assets in a context where it already knowingly participated in Manfredi's scheme to prevent Francesco from securing restitution.  In addition, if the Royal Caribbean stock that Manfredi possesses or that has yet to be transferred to Manfredi is not restricted, then Manfredi would be positioned to dissipate those assets and thus prevent Francesco from enforcing a judgment against him.

WHEREFORE, Plaintiff Francesco Lefebvre prays for judgment against Defendant as set forth below.

### COUNT I
### Florida Statutes § 726: Florida Uniform Fraudulent Transfer Act

54.     Plaintiff re-alleges paragraphs 1-53 as if fully set forth herein.

55.     Plaintiff is a creditor of Manfredi and Manfredi is a debtor of Plaintiff.

56.     On July 31, 2018 and on July 9, 2020, Manfredi transferred and caused entities within his control to transfer ownership interests in Silversea and its assets to Royal Caribbean.

57.     The Silversea Transfers were fraudulent under Fla. Stat. § 726.105(1)(a) because Manfredi caused those transfers to occur with actual intent to hinder, delay, or defraud Plaintiff.

Manfredi implemented that transaction to prevent Plaintiff from recovering the Silversea capital stock and assets to which he is entitled by transferring those assets to Royal Caribbean and out of Manfredi's possession or control.

58.     The transfers were made while Manfredi, Heritage, and Silversea were subject to Plaintiff's lawsuit concerning the ownership of Silversea's capital stock and its assets, while claims were pending for restitution of Silversea's capital stock and its assets, and immediately after the Supreme Court Order made Plaintiff's entitlement to those assets clear.

59.     The transfers were for all of Silversea's capital stock and assets and for all of Manfredi's and Heritage's ownership in Silversea and its assets.

60.     The transfers removed those assets from Manfredi's ownership and/or control and made them more remote in connection with any effort by Francesco to enforce a judgment against Manfredi.

61.     The transfers occurred before the disposition of the Italy Action pursuant to the Supreme Court Order favoring Plaintiff's ownership interest in those assets, and thus before Manfredi incurred a substantial debt to Plaintiff.

62.     Both before and after the transfers, Manfredi purported to control Silversea and its assets, including by remaining the Chairman of Heritage and the Chairman of Silversea.

63.     As a result of the foregoing, the Silversea Transfers should be avoided as fraudulent transfers.

<u>**COUNT II**</u>
**Florida Statutes § 86: Declaratory Judgment**

64.     Plaintiff re-alleges paragraphs 1-53 as if fully set forth herein.

65.     Plaintiff is entitled to 52.12% of the Silversea capital stock and its assets.

15

66.     There is a bona fide, actual, present, practical need for a declaration that Plaintiff is entitled to 52.12% of the Silversea capital stock and assets currently in Royal Caribbean's possession or control.  The declaration concerns present, ascertained, or ascertainable facts, or a present controversy as to a state of facts.

67.     Royal Caribbean has an adverse interest to Plaintiff's interest with respect to the issue of Plaintiff's entitlement to 52.12% of the Silversea capital stock and assets.

68.     A declaratory judgment in favor of the Plaintiff is necessary and proper.

## COUNT III
### Unjust Enrichment

69.     Plaintiff re-alleges paragraphs 1-53 as if fully set forth herein.

70.     Plaintiff owned 52.12% of the capital stock of Silversea and its assets.

71.     Prior to the Silversea Transfers, Royal Caribbean knew that Silversea's capital stock and its assets were subject to Plaintiff's claims of ownership and restitution.

72.     Royal Caribbean obtained a benefit from Plaintiff.  On July 31, 2018 and July 9, 2020, Royal Caribbean obtained ownership of Silversea's capital stock and its assets, 52.2% of which is rightfully owned by Plaintiff.

73.     Royal Caribbean did not provide Plaintiff any compensation for Silversea's capital stock or its assets.

74.     As a result, Royal Caribbean has been unjustly enriched at Plaintiff's expense and to his detriment, and to allow Royal Caribbean to retain the benefits without paying the value thereof to Plaintiff would result in a windfall to Royal Caribbean and would violate fundamental principles of good conscience, justice and equity.

75.     As a direct and proximate result of Royal Caribbean being unjustly enriched, Plaintiff has suffered damages in an amount to be determined at trial.

16

<u>**COUNT IV**</u>
**Conversion**

76.     Plaintiff re-alleges paragraphs 1-53 as if fully set forth herein.

77.     Plaintiff is the owner of and has a superior claim of ownership to 52.12% of Silversea's capital stock and assets.

78.     On July 31, 2018 and July 9, 2020, Manfredi caused Silversea's capital stock and its assets to be transferred to Royal Caribbean.

79.     Royal Caribbean has since wrongfully exercised dominion and control over Silversea's capital stock and assets that Plaintiff rightfully owns.  Royal Caribbean's exercise of dominion and control over that stock and assets is inconsistent with Plaintiff's entitlement to that property.

80.     Plaintiff did not authorize or approve of the transfer of Silversea's capital stock and assets to Royal Caribbean.

81.     Plaintiff notified Royal Caribbean of his superior claim of ownership to 52.12% of Silversea's capital stock and assets on multiple occasions.

82.     Royal Caribbean has not returned Silversea's capital stock or assets to Plaintiff.

83.     As a direct and proximate result of Royal Caribbean's conversion of the Silversea capital stock and assets, Plaintiff has suffered damages in an amount to be determined at trial.

<u>**COUNT V**</u>
**Aiding and Abetting Conversion**

84.     Plaintiff re-alleges paragraphs 1-53 as if fully set forth herein.

85.     Plaintiff is the owner of and has a superior claim of ownership to 52.12% of Silversea's capital stock and assets.

86.     On July 31, 2018 and July 9, 2020, Manfredi caused Silversea's capital stock and assets to be transferred to Royal Caribbean.

87.     Plaintiff did not authorize or approve of the transfer of Silversea's capital stock and assets to Royal Caribbean.

88.     Prior to the Silversea Transfers, Royal Caribbean was aware that Manfredi did not own all of Silversea's capital stock and assets, that Silversea's capital stock and assets were subject to superior claims of ownership, and that Silversea's capital stock and assets were subject to judicial claims of restitution.

89.     Through the Silversea Transfers, Royal Caribbean participated and rendered substantial assistance to Manfredi and entities under his control in transferring Silversea's capital stock and assets to Royal Caribbean.

90.     Through the Silversea Transfers, Manfredi and Royal Caribbean deprived Plaintiff of his ownership and rights to Silversea's capital stock and assets.

91.     Neither Manfredi nor Royal Caribbean have returned Silversea's capital stock or assets to Plaintiff.

92.     As a direct and proximate result of Royal Caribbean aiding and abetting the conversion of the Silversea capital stock and assets, Plaintiff has suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

a.     An order enjoining Royal Caribbean from disposing of, transferring, or encumbering 52.12% of the Silversea capital stock or its assets pursuant to Fla. Stat. § 726.108(1)(c)(1);

18

b.     An order enjoining Royal Caribbean from transferring any Royal Caribbean stock to Manfredi or any entity in Manfredi's control in connection with the Silversea Transfer pursuant to Fla. Stat. § 726.108(1)(c)(1);

c.     An order attaching 52.12% of Silversea's capital stock and its assets that were transferred to Royal Caribbean pursuant to the Silversea Transfers or other property of Royal Caribbean for Plaintiff's benefit pursuant to Fla. Stat. § 726.108(1)(b);

d.     An order attaching any Royal Caribbean stock in Manfredi's possession pursuant to the Silversea Transfers for Plaintiff's benefit pursuant to Fla. Stat. § 726.108(1)(b);

e.     An order avoiding the Silversea Transfers to the extent necessary to satisfy Plaintiff's claim pursuant to Fla. Stat. § 726.108(1)(a);

f.     An injunction against any disposition of 52.12% of Silversea's capital stock and its assets pursuant to Fla. Stat. § 726.108(1)(c)(1);

g.     An order appointing a receiver to take charge of 52.12% of Silversea's capital stock and its assets or other property of Royal Caribbean pursuant to Fla. Stat. § 726.108(1)(c)(2);

h.     A judgment against Royal Caribbean for the value of 52.12% of Silversea's capital stock and its assets pursuant to Fla. Stat. § 726.109(2);

i.     An order for any other relief the circumstances may require pursuant to Fla. Stat. § 726.108(1)(c)(3);

j.     An award for damages in the amount that Royal Caribbean was unjustly enriched by obtaining 52.12% of Silversea's capital stock and its assets;

k.     Damages for the conversion of 52.12% of Silversea's capital stock and assets;

l.      Restitution to Plaintiff of 52.12% of Silversea's capital stock and assets;

m.     An order requiring Royal Caribbean to disgorge the value of 52.12% of Silversea's capital stock and assets and any profits earned on such property;

n.      An order requiring Royal Caribbean to account to Plaintiff for the value of 52.12% of Silversea's capital stock and assets and any profits earned on such property;

o.      An award of punitive damages, provided the Court grants Plaintiff leave to seek punitive damages, including an award of the costs of this action and Plaintiff's attorneys' fees;

p.      An award of pre-judgment and post-judgment interest on any award of damages; and

q.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Dated: May 23, 2022

Respectfully submitted,

/s/ *Carl Goldfarb*
Carl Goldfarb
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd.,  Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 356-0011
Fax: (954) 356-0022

David Boies
Marc Ayala
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

      **I.    CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT, IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Francesco Lefebvre d'Ovidio</u>
Plaintiff

Case # _____

Judge _____

vs.

<u>Royal Caribbean Cruises Ltd</u>
Defendant

      **II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐  $8,000 or less
- ☐  $8,001 - $30,000
- ☐  $30,001- $50,000
- ☐  $50,001- $75,000
- ☐  $75,001 - $100,000
- ☒  over $100,000.00

      **III.    TYPE OF CASE**    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☒ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

**IV.   REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.   NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  <u>5</u>

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.   DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Carl E. Goldfarb Esq.</u>       Fla. Bar # <u>125891</u>
      Attorney or party               (Bar # if attorney)

<u>Carl E. Goldfarb Esq.</u>            <u>05/23/2022</u>
  (type or print name)           Date