# ATTACHMENT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-mc-20751

In re Application of:
Francesco Lefebvre D'Ovidio,
for Order to Obtain Discovery for
Use in Foreign Proceeding.
_____/



FILED BY _____ D.C.

FEB 2 8 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

Jason Canales, Esq.
Florida Bar No. 793981
MOSES & SINGER LLP
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel: (212) 554-7875
Fax: (212) 377-6075
Email: jcanales@mosessinger.com
Attorneys for the Applicant,
Francesco Lefebvre D'Ovidio

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... ii

JURISDICTION AND VENUE ......................................................................................... 2

FACTUAL BACKGROUND ............................................................................................ 2

    **1.**    The Italian Litigation and the Dispute over Ownership of Silversea Shares ........... 2

    **2.**    The Applicant Learns that RCC is Purchasing the Capital Stock of Silversea ........ 5

    **3.**    RCC Is Placed on Notice of the Dispute Over Ownership of Silversea Shares ...... 6

ARGUMENT ...................................................................................................................... 6

**A.**          LEGAL STANDARD ............................................................................................ 6

**B.**          THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782 ARE SATISFIED 8

    **1.**    The Applicant qualifies as an "interested person" .................................................... 8

    **2.**    The Instant Application Seeks Documents and Testimony ...................................... 8

    **3.**    The Requested Evidence is Sought for Use in a Pending Proceeding in a Foreign Tribunal .................................................................................................................... 9

    **4.**    The Person from Whom Discovery is Sought is Found in this District ................. 10

**C.**          THE *INTEL* DISCRETIONARY FACTORS WEIGH IN FAVOR OF DISCLOSURE .................................................................................................................. 11

    **1.**    The Person from Whom Discovery is Sought is Not a Participant in the Italian Litigation ............................................................................................................... 11

    **2.**    The Nature of the Foreign Tribunal, the Character of the Proceedings Underway Abroad, and the Receptivity of the Foreign Government, Court or Agency Abroad, to U.S. Federal-Court Judicial Assistance Favor Disclosure ................... 12

    **3.**    The Applicant is not Attempting to Circumvent Foreign Proof Gathering Restrictions or Other Policies of a Foreign Country or the United States ............. 14

    **4.**    The discovery requests are not unduly intrusive or burdensome. .......................... 15

**D.**          THIS APPLICATION MAY BE GRANTED *EX PARTE* .................................. 16

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Application of Bracha Found.*,
    663 F. App'x 755 (11th Cir. 2016) ....................................................................................12, 16

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS
Forwarding (USA), Inc.*,
    747 F.3d 1262 (11th Cir. 2014) ...............................................................................................9

*In re Application of Mesa Power Grp., LLC*,
    878 F. Supp. 2d 1296 (S.D. Fla. 2012) ................................................................7, 11, 13, 15

*In re Application of N. Am. Potash, Inc.*,
    No. 12-20637-CV, 2012 WL 12877816 (S.D. Fla. Nov. 19, 2012) ...........................12, 13, 15

*In re Bernal*,
    No. 18-21951-MC, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) .......................................8, 10

*In re Braga*,
    272 F.R.D. 621 (S.D. Fla. 2011)............................................................................................16

*In re Clerici*,
    481 F.3d 1324 (11th Cir. 2007) .....................................................................................7, 9, 16

*In re Emergency Ex Parte Application of Godfrey*,
    No. 17-21631-CV, 2018 WL 1863749 (S.D. Fla. Feb. 22, 2018) ...........................................11

*In re Ferrer*,
    No. 18-20226-CIV, 2018 WL 3240010 (S.D. Fla. July 3, 2018) ........................................9, 13

*HT S.R.L. v. Velasco*,
    No. MC 15-664 (RBW), 2015 WL 13759884 (D.D.C. Nov. 13, 2015) ...........................14, 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).......................................................................................................... *passim*

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*,
    No. CIV.A. 11-1007-SLR, 2013 WL 1867345 (D. Del. Mar. 28, 2013)................................13

*Lancaster Factoring Co. v. Mangone*,
    90 F.3d 38 (2d Cir. 1996)........................................................................................................9

*In re Application of MTS Bank*, No. 17-21545-MC, 2017 WL 3276879 (S.D. Fla.
    Aug. 1, 2017) .........................................................................................................................13

*In re MTS Bank*,
   No. 17-21545-MC, 2018 WL 3145806 (S.D. Fla. June 27, 2018) ...........................................12

*In re Nieri*,
   No. CIV.A. M12-329, 2000 WL 60214 (S.D.N.Y. Jan. 24, 2000)............................................9

*Sergeeva v. Tripleton Int'l Ltd.*,
   834 F.3d 1194 (11th Cir. 2016) .............................................................................................11

*In re Trinidad & Tobago*,
   848 F.2d 1151 (11th Cir. 1988) .............................................................................................17

**Statutes**

28 U.S.C. § 1782.......................................................................................................... *passim*

The Applicant, Francesco Lefebvre D'Ovidio (the "Applicant"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in support of his *ex parte* Application for an Order, pursuant to 28 U.S.C.§ 1782 and Rules 26, 30 and 45 of the Federal Rules of Civil Procedure, granting leave to conduct discovery for use in a court case presently pending in the *Corte d'Appello di Bologna*, Italy, captioned *Francesco Lefebvre D'Ovidio de Clunieres di Balsorano v. Manfredi Lefebvre D'Ovidio de Clunieres di Balsorano, et al.* (the "Italian Litigation"). The claims asserted in the Italian Litigation concern, *inter alia*, the ownership of the capital stock of Silversea Cruise Holding Ltd. ("Silversea"). The Applicant seeks to obtain discovery for use in the Italian Litigation from Royal Caribbean Cruises Ltd. ("RCC") in connection with RCC's recent acquisition of 66.7% of the capital stock of Silversea.

All of the statutory requirements under 28 U.S.C. § 1782 are satisfied. The Applicant is the plaintiff in the pending Italian Litigation and is therefore an "interested person" for purposes of section 1782. The Applicant seeks evidence through documents and testimony. The *Corte d'Appello di Bologna*, the court in which the Italian Litigation is presently pending, is a conventional civil court in Italy and, accordingly, is a "tribunal" within the meaning of 28 U.S.C. § 1782. The Applicant has the ability to inject the requested information into the Italian Litigation, a pending foreign proceeding in which the Applicant is the plaintiff. Finally, RCC, the entity from which discovery is sought, is found within this District.

The discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), also favor granting the Application. RCC is not a participant in the Italian Litigation. The *Corte d'Appello di Bologna* neither has a rule nor has issued an order prohibiting the Applicant from obtaining the relief requested in this Application. Evidence obtained pursuant to 28 U.S.C. § 1782 may be added to the record in the Italian Litigation, and

taken into consideration by the *Corte d'Appello di Bologna*. Moroever, the Applicant is not attempting to circumvent any foreign proof-gathering limits or other policies of Italy or the United States. Finally, the requested discovery is narrowly tailored to issues in the Italian Litigation and is limited to the time during which RCC conducted due diligence in furtherance of its recent acquisition of capital stock of Silversea.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1782 as this Application seeks discovery from RCC, a person found within the Southern District of Florida, for use in a proceeding pending in a foreign tribunal. Venue in the Southern District of Florida is appropriate pursuant to 28 U.S.C. § 1782 because the discovery is being sought from RCC, a company that resides or is found in this judicial district.

## FACTUAL BACKGROUND

### 1.    The Italian Litigation and the Dispute over Ownership of Silversea Shares

On March 3, 2008, the Applicant, an individual and a citizen of Italy, commenced the Italian Litigation against his brother, Manfredi Lefebvre D'Ovidio ("Manfredi"), seeking rescission of a settlement agreement dated May 30, 2001 (the "Settlement Agreement") between the Applicant and Manfredi, and nullification of certain transactions performed by the Applicant pursuant to the Settlement Agreement. (*See* Declaration of Salvatore Patti, dated February 22, 2019[1] ("Patti Decl.") ¶ 4 in support of this Application)

The Settlement Agreement, which is governed by Italian law, was intended to resolve disputes regarding certain family assets. The Applicant performed his obligations under the Settlement Agreement by, *inter alia*, transferring, per Manfredi's instructions, 52.12% of the

---

[1] Mr. Patti is an attorney representing the Applicant in the Italian Litigation. (Patti Decl. ¶¶ 1-3)

capital stock of Eurosecurities Corp. S.A. ("Eurosecurities"), a holding company owning several entities, to Triani Corp. ("Triani"), a Panamanian entity owned and/or controlled by Manfredi. Silversea was Eurosecurities' largest asset at the time of said transfer. (Patti Decl. ¶ 5)

Pursuant to the Settlement Agreement, Manfredi was obligated to (i) transfer or procure the transfer to the Applicant of the capital stock of Elite Merchant & Finance Co., an entity of the Eurosecurities group; (ii) transfer or procure the transfer to the Applicant of all rights, including receivables and liens, claimed by Eurosecurites (as well as Eurosecurities' related entities) upon COIMAR S.p.A., another entity of the Eurosecurities group; (iii) ratify or procure the ratification of the Applicant's decisions as a director of Sitav S.p.A., another entity of the Eurosecurities group; and (iv) release or procure the release of the Applicant from any claims by Sitav S.p.A. against the Applicant as a former director of Sitav S.p.A. (Patti Decl. ¶ 6) The Applicant alleges in the Italian Litigation that Manfredi breached the Settlement Agreement because he (i) did not transfer or procure the transfer of the capital stock of Elite Merchant & Finance Co. to the Applicant; (ii) did not ratify or procure the ratification of the Applicant's decisions as a director of Sitav S.p.A.; (iii) did not transfer or cause the transfer to the Applicant of Eurosecurities' rights upon COIMAR S.p.A., and instead caused Vera Limited (an entity that controlled Eurosecurities) to file a lawsuit against COIMAR S.p.A. in violation of the Settlement Agreement; (iv) did not release or procure the release of the Applicant from Sitav S.p.A.'s claims (if any). Instead, in violation of the Settlement Agreement, Manfredi (who then controlled Sitav S.p.A.) caused Sitav S.p.A. to continue to prosecute a lawsuit against the Applicant, as former director of Sitav S.p.A., for alleged breach of corporate director's duties. Ultimately, the presiding court found in favor of the Applicant and held that the Applicant did not breach his duties as a director of Sitav S.p.A. (Patti Decl. ¶ 7)

3

The Settlement Agreement explicitly provides that in the event of a breach of the Settlement Agreement, the non-breaching party may rescind the Settlement Agreement, declare null and void *ab initio* the Settlement Agreement as well as all transfers of assets performed pursuant to the Settlement Agreement. (Patti Decl. ¶ 8)

By reason of Manfredi's aforementioned breaches, on January 29, 2008, by letter to Manfredi, the Applicant terminated the Settlement Agreement. (Patti Decl. ¶ 9) Thereafter, on March 3, 2008, the Applicant commenced the Italian Litigation. (Patti Decl. ¶ 10)

The Applicant alleges in the Italian Litigation that Manfredi breached the Settlement Agreement, defrauded the Applicant, had no intention of performing his obligations under the Settlement Agreement, and entered into the Settlement Agreement to gain possession of the Applicant's assets without paying consideration. (Patti Decl. ¶ 11) The Applicant further asserts in the Italian Litigation that, in an attempt to frustrate the Applicant's efforts to seek restitution and regain possession of the transferred assets or, in the alternative, obtain payment of their value, Manfredi abruptly dissolved Eurosecurities and engaged in a scheme to transfer the capital stock of Silversea to himself or entities or individuals controlled by him without proper consideration. The Applicant further alleges that, as part of his scheme, Manfredi created, controlled and dissolved *ad hoc* entities, scattered throughout the world, that shuffled assets (including the shares of Silversea and other assets at issue in the Italian Litigation) between themselves, Manfredi and individuals controlled by him, in an effort to leave the Applicant holding an empty bag when attempting to recover in the Italian Litigation. (Patti Decl. ¶ 12)

The trial court in the Italian Litigation found that Manfredi did not breach the Settlement Agreement. The *Corte d'Appello di Bologna* affirmed the trial court's decision. The Applicant appealed, and on June 21, 2018, the *Corte Suprema di Cassazione* (the highest court in Italy)

4

reversed the decision of the *Corte d'Appello di Bologna*, holding that the *Corte d'Appello di Bologna* had erroneously applied the applicable law in deciding that Manfredi had fulfilled his obligations under the Settlement Agreement, and remanded the case to the *Corte d'Appello di Bologna* for new decision with instructions. (Patti Decl. ¶ 14 and Exhibit A thereto)

The case is now pending before the *Corte d'Appello di Bologna* where, on October 22, 2018, the Applicant filed the *Atto di Citazione in Riassunzione Per il Giudizio di Rinvio*, a pleading which apprises the *Corte d'Appello di Bologna* of the status of the litigation, the remaining issues that remain to be decided, and the claims by the Applicant. (Patti Decl. ¶ 15) In light of the decision of the *Corte Suprema di Cassazione*, the *Corte d'Appello di Bologna* must determine, *inter alia*, whether the transferred assets, including the capital stock of Silversea, must be returned to the Applicant or, alternatively, whether damages must be paid in the amount of the value of the transferred assets if the assets may not be located. (Patti Decl. ¶ 16)

The Applicant seeks in the Italian Litigation rescission of the Settlement Agreement and, as a result, restitution of all assets transferred pursuant to the Settlement Agreement, including the capital stock of Silversea together with Silversea's vessels (or, alternatively, damages in the amount of the value of the transferred assets). The Applicant also seeks payment of any dividends that were paid to Manfredi or entities controlled by Manfredi as purported shareholder of Silversea from the time of the Applicant's transfer of capital stock of Eurosecurities to Triani to the present. The Applicant also seeks in the Italian Litigation the return of certain assets, including Silversea's capital stock, (or their monetary value) that were fraudulently conveyed by Manfredi to entities owned or controlled by Manfredi. (Patti Decl. ¶ 17)

## 2. The Applicant Learns that RCC is Purchasing the Capital Stock of Silversea

In or about July 2018, during the pendency of the Italian Litigation, the Applicant learned that RCC was in the process of purchasing the capital stock of Silversea from Manfredi.

5

Newspapers, trade magazines articles and RCC's June 14, 2018, filing of Form 8-K with the Securities and Exchange Commission ("SEC") publicized that RCC was purchasing the capital stock of Silversea from Manfredi, who was going to receive consideration for such sale. (Patti Decl. ¶ 18)

**3.     RCC Is Placed on Notice of the Dispute Over Ownership of Silversea Shares**

On July 20, 2018, the law firm of Foley & Lardner LLP ("Foley"), as attorneys for the Applicant, contacted the law firm of Skadden Arps ("Skadden"), counsel for RCC in the acquisition of Silversea, to inform RCC that the Applicant claimed ownership of the capital stock of Silversea. (Patti Decl. ¶ 19) A conference call was held between Foley and Skadden on July 22, 2018. During that call, Foley informed Skadden that the Applicant had sued Manfredi in Italy, that the Italian Litigation concerned, *inter alia*, a dispute over the ownership of the capital stock of Silversea and the vessels that RCC was acquiring, and that the Applicant sought restitution of the shares in Silversea. Foley then sent an email to Skadden on July 22, 2018, memorializing the contents of the aforementioned call. The Applicant received no answer from Skadden. (Patti Decl. ¶ 20 and Exhibit B thereto)

On July 31, 2018, RCC announced the closing of its acquisition of 66.7% equity stake (the "Shares") in Silversea. (Patti Decl. ¶ 21). On October 26, 2018, RCC filed Form 10-Q -- Quarterly Report -- with the SEC stating that the capital stock of Silversea was sold to RCC by an entity named Silversea Cruises Group Ltd. and not by Manfredi. (Patti Decl. ¶ 18)

## ARGUMENT

**A.     Legal Standard**

Section 1782, Title 28, of the U.S. Code authorizes a United States District Court, upon the application of an interested person, to order a person residing or found in the district to give testimony or produce documents for use in a foreign proceeding:

6

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782. "'The history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance.'" *In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007) (quoting *Lo Ka Chun v. Lo To*, 858 F.2d 1564, 1565 (11th Cir.1988)). "As such, Congress has intentionally granted the district courts broad discretion in granting judicial assistance under § 1782." *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1301 (S.D. Fla. 2012) (citing *In re Application of Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 685 F.3d 987, 1001 (11th Cir. 2012)).

The U.S. Court of Appeals for the Eleventh Circuit has articulated the following four statutory requirements for the grant of relief under section 1782:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance."

*In re Clerici*, 481 F.3d at 1331-32 (quoting § 1782(a)) (footnotes omitted).

Once the *prima facie* requirements of section 1782 are met, district courts must also consider the following discretionary factors:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding,"…; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."

*Id.* at 1334 (quoting *Intel*, 542 U.S. at 264-65).

As set forth in Sections B and C, *infra*, the *prima facie* requirements are satisfied, and each of the *Intel* discretionary factors weighs in favor of granting this Application.

## B. The Statutory Requirements of 28 U.S.C. § 1782 are Satisfied

### 1. The Applicant qualifies as an "interested person"

With respect to the first statutory requirement, the Applicant qualifies as an "interested person" because he is the plaintiff in the pending Italian Litigation. (Patti Decl. ¶ 3) *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782"); *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *2 (S.D. Fla. Dec. 18, 2018) ("Mr. Bernal, as a party to the foreign proceeding, plainly qualifies as an 'interested person' under the statute.").

### 2. The Instant Application Seeks Documents and Testimony

As to the second statutory requirement, the Applicant seeks evidence through means specifically provided for by the statute, namely documents and testimony. The Applicant seeks targeted documents (and related testimony) received or examined by RCC during the due diligence RCC conducted prior to purchasing the Shares on July 31, 2018, such as documents showing ownership and the chain of ownership of the Shares, seller's representations to RCC with respect to ownership of the Shares, how and to whom RCC paid the purchase price of the Shares, and correspondence between RCC and Manfredi (or Manfredi's owned or controlled entity that sold the Shares to RCC) or their respective agents pertaining to Manfredi's dispute with the Applicant. Accordingly, the second statutory requirement is satisfied. *See In re Bernal*, 2018 WL 6620085, at *2 ("The second requirement is met because [the] application seeks evidence in the form of document productions."). Moreover, the Applicant is seeking to conduct discovery in accordance with the provisions of Rules 26, 30, 34 and 45 of the Federal Rules of Civil Procedure.

8

3.    **The Requested Evidence is Sought for Use in a Pending Proceeding in a Foreign Tribunal**

Third, the requested evidence is sought for use in the pending Italian Litigation before the *Corte d'Appello di Bologna*, a foreign tribunal. "The term 'tribunal' ... includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 n.4 (11th Cir. 2014) (quoting *Intel*, 42 U.S. at 258) (alterations omitted). Here, the *Corte d'Appello di Bologna* is a conventional civil court in Italy. (Patti Decl. ¶ 22) Accordingly, the *Corte d'Appello di Bologna* is a "tribunal" within the meaning of section 1782. The Italian Litigation is therefore within the intended scope of § 1782. *See Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) (holding that bankruptcy proceeding in Italy "is within the intended scope of § 1782"); *In re Nieri*, No. CIV.A. M12-329, 2000 WL 60214, at *1 (S.D.N.Y. Jan. 24, 2000) (compelling disclosure of discovery granted pursuant to 28 U.S.C. § 1782 "in furtherance of lawsuits pending ... before **Italian tribunals**" (emphasis added)). Where, as here, a proceeding in a foreign tribunal has already been filed, this requirement is satisfied. *In re Clerici*, 481 F.3d at 1333 ("Here, the proceeding actually was filed before the letter rogatory was even issued, and the third statutory requirement for a proper request under § 1782 is satisfied.").

The "for use" requirement is satisfied where the applicant has the ability "to inject the requested information into a foreign proceeding" and the "requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" *In re Ferrer*, No. 18-20226-CIV, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017)). Here, the Applicant has the ability to inject the requested documentation/information into the Italian Litigation, a pending foreign proceeding in

which the Applicant is the plaintiff. (Patti Decl. ¶¶ 23-28)  The discovery the Applicant seeks would inform the Italian tribunal's understanding of the nature, extent and scope of Manfredi's complex scheme to frustrate the Applicant's claims for restitution of assets, including the capital stock of Silversea, as well as his complete domination of his corporations. (Patti Decl. ¶ 29)  The information sought by the Applicant is relevant to the allegations in the Italian Litigation that Manfredi completely dominates his corporations (including Silversea), shuffles assets between his companies, and treats Silversea and other corporate assets as his own assets in complete disregard of corporate ownership and separateness between corporate and personal assets, all in an effort to hide assets and eventually hinder enforcement of judgment against him. (Patti Decl. ¶ 29)  More specifically, the requested discovery will be employed to (i) establish the chain of ownership of the capital stock of Silversea; (ii) evidence Manfredi's alleged scheme to create, dominate and dissolve entities and shuffle relevant assets (including the capital stock of Silversea) between and among said entities in an effort to frustrate the Applicant's claims for restitution of the assets; (iii) evidence the monetary value of the disputed Shares of which the Applicant seeks restitution; and (iv) support the Applicant's contemplated motion against Manfredi for *sequestro conservativo* (the equivalent of an attachment of assets) in the Italian Litigation. (Patti Decl. ¶¶ 30 and 36)

### 4. The Person from Whom Discovery is Sought is Found in this District

The fourth statutory requirement is also satisfied because RCC, the entity from which discovery is sought, is found in this District.   RCC's corporate headquarters and principal place of business are located at 1050 Caribbean Way, Miami, Florida 33132.  (*See* Declaration of Jason Canales – "Canales Decl." -- ¶ 5 and Exhibit 3 thereto)  Accordingly, section 1782 authorizes this Court to grant this Application. *See In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *2 (S.D. Fla. Dec. 18, 2018) ("the fourth requirement [under section 1782(a)] is met because [the applicant] seeks discovery from two Florida LLCs – both of which are headquartered in Florida.");

*In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d at 1303 (holding that "the Court is undoubtedly authorized by statute to provide § 1782 assistance" where the applicant sought discovery from an entity headquartered in Juno Beach, FL with a registered agent in Miami.).

In the event that the requested documents are located outside of this jurisdiction, this Court nevertheless has the power to compel RCC's production. "[T]he location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a *per se* bar to discovery under § 1782." *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016). "It is thus well established in this Circuit that § 1782 has 'extraterritorial reach.'" *In re Emergency Ex Parte Application of Godfrey*, No. 17-21631-CV, 2018 WL 1863749, at \*11 (S.D. Fla. Feb. 22, 2018) (quoting *Fuhr v. Credit Suisse AG*, 687 Fed.Appx. 810, 816 n.8 (11th Cir. 2017) (rejecting argument "that the district court lacked the power to compel production of the documents that [applicant] sought because the documents were located abroad, and § 1782 does not have extraterritorial reach.")), *report and recommendation adopted sub nom. In re Godfrey*, No. 17-21631-CIV, 2018 WL 1859344 (S.D. Fla. Mar. 15, 2018).

## C.    The *Intel* Discretionary Factors Weigh in Favor of Disclosure

Not only have the *prima facie* requirements under section 1782(a) been satisfied, but each of the discretionary factors weighs in favor of granting this Application.

### 1.    The Person from Whom Discovery is Sought is Not a Participant in the Italian Litigation

The first factor, "whether the person from whom discovery is sought is a participant in the foreign proceeding," weighs in favor of granting discovery to the Applicant because RCC is not a participant in the Italian Litigation. The Court of Appeals for the Eleventh Circuit has explained that:

§ 1782 discovery is more likely to be justified when the person from whom the discovery is sought is not a participant in the prospective foreign proceeding

11

because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."

*In re: Application of Bracha Found.*, 663 F. App'x 755, 764–65 (11th Cir. 2016) (quoting *Intel*, 542 U.S. at 264). Here, RCC is not a party to the Italian Litigation, and the Italian Court has no jurisdiction to compel RCC to produce documents or testimony in the Italian Litigation. (Patti Decl. ¶ 31) As such, this factor weighs in favor of allowing the requested discovery. *In re Application of N. Am. Potash, Inc.*, No. 12-20637-CV, 2012 WL 12877816, at \*6 (S.D. Fla. Nov. 19, 2012) ("neither Gloab nor Global Trading are litigants in the Canadian litigation. . . . Accordingly, this factor weighs in favor of allowing the discovery."), *report and recommendation adopted*, No. 12-20637, 2013 WL 12113190 (S.D. Fla. Mar. 13, 2013).

### 2. The Nature of the Foreign Tribunal, the Character of the Proceedings Underway Abroad, and the Receptivity of the Foreign Government, Court or Agency Abroad, to U.S. Federal-Court Judicial Assistance Favor Disclosure

"The second *Intel* factor examines whether the foreign tribunal 'is willing to consider the information sought.'" *In re MTS Bank*, No. 17-21545-MC, 2018 WL 3145806, at \*6 (S.D. Fla. June 27, 2018) (quoting *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, \*3 (C.D. Cal. Nov. 4, 2013)). "Another nation's limit on discovery 'within its domain for reasons peculiar to its own legal practices, culture, or traditions ... do[es] not necessarily signal objection to aid from United States federal courts.'" *In re MTS Bank*, 2018 WL 3145806, at \*6 (quoting *Intel*, 542 U.S. at 261). "Instead, courts look for 'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782.'" *Id.* (quoting *In re Kreke Immobilien KG*, 2013 WL 5966916, at \*5 (S.D.N.Y. Nov. 8, 2013)). "Such proof has been found to exist *only* where the representative of a foreign sovereign has expressly and clearly made its position known." *In re Application of N. Am. Potash, Inc.*, 2012 WL 12877816, at \*6 (citing *Schmitz v. Bernstein, Liebhard, & Lifshitz, LLP*, 376 F.3d 79, 84-85 (2d Cir. 2004)). "The party opposing discovery under Section 1782(a) has the

12

burden of demonstrating offense to the foreign jurisdiction…." *In re Ferrer*, 2018 WL 3240010, at *8 (quoting *In re Chevron Corp.*, 633 F.3d 153,162 (3d Cir. 2011)). "[C]ourts must consider only 'authoritative proof' that the foreign jurisdiction would reject the § 1782 request for assistance." *In re Application of N. Am. Potash, Inc.*, 2012 WL 12877816, at *6 (quoting *In re Application of Geinschaftspraxis Dr. Med. Schottdork*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006)). "Beyond shielding material safeguarded by an applicable privilege, … nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel*, 542 U.S. at 260. "[I]t is now clear that '§ 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding.'" *In re Application of Mesa Power Grp.*, 878 F. Supp. 2d at 1304 n.3 (quoting *Intel*, 542 U.S. at 247).

Here, there is no suggestion that the *Corte d'Appello di Bologna* would reject evidence obtained pursuant to section 1782. *See In re Application of MTS Bank, No. 17-21545-MC*, 2017 WL 3276879, at *10 (S.D. Fla. Aug. 1, 2017) (allowing § 1782 discovery due to "lack of authoritative evidence that Russian courts are not receptive to American judicial assistance"). Indeed, U.S. district courts have consistently allowed disclosure under section 1782 for use in proceedings taking place in Italian Courts, holding that that the receptivity factor weighs in favor of allowing discovery. *See INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, No. CIV.A. 11-1007-SLR, 2013 WL 1867345, at *4 (D. Del. Mar. 28, 2013) (applying *Intel* section 1782(a) factors and holding that "as to the receptivity of the foreign government to federal judicial assistance," there was no evidence "that the documents would not be utilized by an Italian court or could not be deemed in some way probative of the … issues at play in the Italian litigation…."), *report and recommendation adopted sub nom. Invista*

*N. Am. S.A.R.I. v. M & G USA Corp.*, No. CIV. 11-1007-SLR/CJB, 2013 WL 2456252 (D. Del. June 5, 2013); *HT S.R.L. v. Velasco*, No. MC 15-664 (RBW), 2015 WL 13759884, at \*4 (D.D.C. Nov. 13, 2015) (holding that magistrate judge "correctly determined that the respondent [opposing section 1782 discovery] failed to meet his burden of proof regarding the Italian court's receptivity of judicial assistance from this Court.").

As stated in the accompanying declaration of the Applicant's Italian counsel, the *Corte d'Appello di Bologna* would be receptive to the requested discovery relating to the capital stock of Silversea, one of the assets in dispute in the Italian Litigation. (Patti Decl. ¶¶ 32-33) Italian law does not limit the methods by which parties may obtain discovery, as long as the discovery has been obtained legally. (Patti Decl. ¶ 33) Moreover, evidence collected through this Application may be added to the record and be taken into consideration by the *Corte d'Appello di Bologna*. (Patti Decl. ¶ 33) Also, the *Corte d'Appello di Bologna* neither has a rule nor has issued a procedural order prohibiting the relief requested in the § 1782 application. (Patti Decl. at ¶ 34)

Finally, the Settlement Agreement at issue in the Italian Litigation is governed by Italian law (Patti Decl. at ¶ 5), further weighing in favor of disclosure. *See HT S.R.L. v. Velasco*, 2015 WL 13759884, at \*3 (holding that magistrate judge "correctly found that the nature of the foreign tribunal weighed in favor of enforcing the subpoena" where a "forum selection clause ... provides that disputes arising from the agreement must be litigated under Italian law" and foreign litigation was pending in the Court of Milan).

Accordingly, the second *Intel* factor weighs in favor of disclosure.

### 3. The Applicant is not Attempting to Circumvent Foreign Proof Gathering Restrictions or Other Policies of a Foreign Country or the United States

The Applicant is not attempting to circumvent foreign proof-gathering limits or other policies of Italy or the United States. (Patti Decl. ¶ 35) "[F]or purposes of § 1782, district courts

should consider neither discoverability nor admissibility in the foreign proceeding." *In re Application of N. Am. Potash, Inc.*, No. 12-20637-CV, 2012 WL 12877816, at \*8 (S.D. Fla. Nov. 19, 2012) (citing *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012)), *report and recommendation adopted*, No. 12-20637, 2013 WL 12113190 (S.D. Fla. Mar. 13, 2013). "Instead, courts should err on the side of ordering discovery, since foreign courts can easily disregard any material that they do not wish to consider." *Id.* (citing *In re Application of Gushlak*, No. 11-MC-218 (NGG), 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011)). Thus, "[a]bsent a persuasive showing that a section 1782 applicant … is actively seeking to circumvent the foreign tribunal's discovery methods and restrictions…, this factor does not counsel against section 1782 relief." *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d at 1305 (denying motion to quash section 1782 subpoena).

Here, the Italian courts have not denied Applicant's access to documents or testimony that Applicant seeks through this Application. (Patti Decl. ¶ 35) To the contrary, the documents requested by the Applicant may be introduced in the Italian Litigation, in compliance with Italian law. (Patti Decl. ¶ 35) Lastly, discovery will be conducted in compliance with the Federal Rules of Civil Procedure.

### 4. The discovery requests are not unduly intrusive or burdensome.

The requested discovery is narrowly tailored to issues in the Italian Litigation and is limited to the discrete and recent time period during which RCC conducted due diligence in furtherance of its acquisition of the Shares of Silversea, which took place on July 31, 2018. (Patti Decl. ¶ 37) Specifically, the Applicant seeks production of documents showing ownership, and chain of ownership, of the capital stock of Silversea, whether dividends were paid to Silversea's purported shareholders, seller's representations to RCC with respect to ownership of the Shares, how and to whom RCC paid the purchase price of the Shares, and correspondence between RCC and Manfredi

(or Manfredi's owned or controlled entity that sold the Shares to RCC) concerning Manfredi's dispute with the Applicant.[2]  (Patti Decl. ¶ 38)  The Applicant also seeks to depose a corporate representative of RCC concerning specific subjects of testimony relating to RCC's dealings with Manfredi and ownership of the capital stock of Silversea.[3]

In sum, all *Intel* discretionary factors weigh in favor of granting this Application.

**D.      This Application May Be Granted *Ex Parte***

Applications pursuant to 28 U.S.C. § 1782 are routinely granted on an *ex parte* basis.  *See In re: Application of Bracha Found.*, 663 F. App'x at 766 ("we reject Halliwel's argument that the district court erred in granting the original § 1782 order *ex parte*."); *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007) (affirming denial of motion to vacate order granting § 1782 *ex parte* application for discovery for use in foreign civil proceedings); *In re Trinidad & Tobago*, 848 F.2d 1151, 1152 (11th Cir. 1988) (affirming § 1782 *ex parte* order), *abrogated on other grounds by, Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260, (2004); *In re Braga*, 272 F.R.D. 621, 625 (S.D. Fla. 2011) ("most § 1782 applications (at least in this district) are filed and decided *ex parte*.").  Accordingly, the Court may grant this Application *ex parte*.

---

[2] A proposed Subpoena to Produce Documents, Information, or Objects in a Civil Action, together with a list of the documents requested, is annexed as Exhibit 1 to the Canales Decl., to which this Court is respectfully referred.

[3] A proposed Subpoena to Testify at a Deposition in a Civil Action, together with a list of subjects of testimony, is annexed as Exhibit 2 to the Canales Decl., to which this Court is respectfully referred.

## CONCLUSION

For the foregoing reasons, Francesco Lefebvre D'Ovidio respectfully requests that this Court grant the instant *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding.

Dated: February 26, 2019

Respectfully Submitted,

Jason Canales, Esq.
Florida Bar No. 793981
MOSES & SINGER LLP
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel: (212) 554-7875
Fax: (212) 377-6075
Email: jcanales@mosessinger.com
Attorneys for the Applicant,
Francesco Lefebvre D'Ovidio