# ATTACHMENT 2

FILED BY _____ D.C.

FEB 28 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

In re Application of:
Francesco Lefebvre D'Ovidio,
for Order to Obtain Discovery for
Use in Foreign Proceeding.
_____/

## DECLARATION OF SALVATORE PATTI

I, Salvatore Patti, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am an attorney at law admitted to practice in the courts of the Italian Republic since 1974.

2. I make this declaration in support of Francesco Lefebvre D'Ovidio's (the "Applicant") *ex parte* Application for an Order pursuant to 28 U.S.C. § 1782 granting leave to conduct discovery for use in a proceeding currently pending in the *Corte d'Appello di Bologna*, Italy, captioned *Francesco Lefebvre D'Ovidio de Clunieres di Balsorano v. Manfredi Lefebvre D'Ovidio de Clunieres di Balsorano, et al.* (the "Italian Litigation").

3. In the Italian Litigation, I represent the Applicant who is the plaintiff in the Italian Litigation. As such, I am fully familiar with the facts set forth in this declaration.

### The Italian Litigation

4. On March 3, 2008, the Applicant, an individual and a citizen of Italy, commenced the Italian Litigation against his brother, Manfredi Lefebvre D'Ovidio ("Manfredi"), seeking rescission of a settlement agreement (the "Settlement Agreement") between the Applicant and Manfredi, and nullification of certain transactions performed by the Applicant pursuant to the Settlement Agreement.

5. The parties entered into the Settlement Agreement, which is governed by Italian law, to put an end to their disputes regarding certain family assets. Pursuant to the Settlement Agreement and per Manfredi's instructions, the Applicant transferred, *inter alia*, 52.12% of the capital stock of an entity named Eurosecurities Corp. S.A. ("Eurosecurities") to an entity named Triani Corp. ("Triani"), a Panamanian corporation owned and/or controlled by Manfredi. Eurosecurities was the holding company of several entities, including an entity named Silversea Cruise Holding Ltd. ("Silversea") which, at the time of the transfer to Triani, was Eurosecurities' most valuable asset. The Applicant performed his obligations under the Settlement Agreement by transferring, *inter alia*, the aforementioned capital stock of Eurosecurities to Triani.

6. Pursuant to the Settlement Agreement, Manfredi had the obligation to (i) transfer or procure the transfer to the Applicant of the capital stock of Elite Merchant & Finance Co., an entity of the Eurosecurities group; (ii) transfer or procure the transfer to the Applicant of all rights, including receivables and liens, claimed by Eurosecurites (as well as Eurosecurities' related entities) upon COIMAR S.p.A., another entity of the Eurosecurities group; (iii) ratify or procure the ratification of the Applicant's decisions as a director of Sitav S.p.A., another entity of the Eurosecurities group; and (iv) release or procure the release of the Applicant from any claims by Sitav S.p.A. against the Applicant as a former director of Sitav S.p.A.

7. Manfredi breached the Settlement Agreement because he (i) did not transfer or procure the transfer of the capital stock of Elite Merchant & Finance Co. to the Applicant; (ii) did not ratify or procure the ratification of the Applicant's decisions as a director of Sitav S.p.A.; (iii) did not transfer or cause the transfer to the Applicant of Eurosecurities' rights upon COIMAR S.p.A., and instead caused Vera Limited (an entity that controlled Eurosecurities) to file a collection lawsuit against COIMAR S.p.A., in blatant violation of the Settlement Agreement; (iv)

2

did not release or procure the release of the Applicant from Sitav S.p.A.'s claims (if any). Instead, in blatant violation of his obligations under the Settlement Agreement, Manfredi (who then controlled Sitav S.p.A.) caused Sitav S.p.A. to continue to prosecute a lawsuit against the Applicant, as former director of Sitav S.p.A., for alleged breach of corporate director's duties. Eventually, the court found in favor of the Applicant and held that the Applicant had breached no duties as a director of Sitav S.p.A.

8. The Settlement Agreement explicitly provides that in the event of a breach of the Settlement Agreement, the non-breaching party may rescind the Settlement Agreement, declare null and void *ab initio* the Settlement Agreement as well as all transfers of assets performed pursuant to the Settlement Agreement.

9. By reason of Manfredi's aforementioned breaches, on January 29, 2008, by letter to Manfredi, the Applicant terminated the Settlement Agreement.

10. Thereafter, as mentioned above, on March 3, 2008, the Applicant commenced the Italian Litigation.

11. In the Italian Litigation, the Applicant alleges that Manfredi breached the Settlement Agreement and defrauded the Applicant since Manfredi had no intention of performing his obligations under the Settlement Agreement and, instead, entered into the Settlement Agreement with the sole goal of obtaining ownership and possession of the Applicant's assets without paying consideration.

12. In the Italian Litigation, the Applicant also alleges that, in an attempt to frustrate the Applicant's efforts to seek restitution and regain possession of the transferred assets or, in the alternative, obtain payment of their value, Manfredi abruptly dissolved Eurosecurities and caused the capital stock of Silversea (Eurosecurities' most valuable asset) to be transferred multiple times

without proper consideration to himself or entities or individuals controlled by him. As part of his complex scheme, Manfredi created, controlled and, if and when necessary, dissolved *ad hoc* entities, scattered throughout the world, which shuffled assets (including assets subject to the Italian Litigation) between themselves and also from and to Manfredi and his cronies, all in an effort to leave the Applicant holding an empty bag when attempting to recover.

13. In the Italian Litigation, the trial court found that Manfredi did not breach the Settlement Agreement. The *Corte d'Appello di Bologna*, the appellate court having jurisdiction over the Italian Litigation, affirmed the trial court's decision. The decision of the *Corte d'Appello di Bologna* was appealed by the Applicant to the *Corte Suprema di Cassazione* (the highest court in Italy).

14. On June 21, 2018, the *Corte Suprema di Cassazione* reversed the decision of the *Corte d'Appello di Bologna* holding that the *Corte d'Appello di Bologna* had erroneously applied the applicable law in deciding that Manfredi had fulfilled the Settlement Agreement, and remanded the case to the *Corte d'Appello di Bologna* for new decision with instructions. (Annexed hereto as **Exhibit A** is a copy of the decision of the *Corte Suprema di Cassazione* as well as its translation from Italian to English)

15. The case is now pending before the *Corte d'Appello di Bologna* where through my law firm, on October 22, 2018, the Applicant filed the *Atto di Citazione in Riassunzione Per il Giudizio di Rinvio* (the "Atto"), a pleading which apprises the *Corte d'Appello di Bologna* of the status of the litigation, the remaining issues to be decided, and the claims by the Applicant.

16. In light of the decision of the *Corte Suprema di Cassazione*, the issue to be decided by the *Corte d'Appello di Bologna* is whether the transferred assets, including the capital stock of

4

Silversea, must be returned to the Applicant or, alternatively, damages must be paid in the amount of the value of the transferred assets if the assets may not be located.

17. Therefore, in the Italian Litigation, the Applicant seeks rescission of the Settlement Agreement and, as a result, restitution of all assets transferred pursuant to the Settlement Agreement, including the capital stock of Silversea (or, alternatively, damages in the amount of the value of the transferred assets), as well as Silversea's assets and in particular the vessels owned by it. Moreover, the Applicant seeks payment of dividends that were paid to Manfredi or entities controlled by Manfredi as purported shareholder of Silversea from the transfer of Eurosecurities to Triani to the present. Lastly, the Applicant demands that certain entities owned or controlled by Manfredi return to the Applicant assets (or pay their monetary value), including Silversea's capital stock, that were fraudulently conveyed by Manfredi to them.

## Royal Caribbean Cruises Ltd. Purchases the Capital Stock of Silversea

18. In or about July 2018, and during the pendency of the Italian Litigation, the Applicant learned that Royal Caribbean Cruises Ltd. ("RCC") was in the process of purchasing the capital stock of Silversea from Manfredi. Newspapers and trade magazines articles and even RCC's June 14, 2018 filing of Form 8-K with the Securities and Exchange Commission ("SEC") reveal that the capital stock of Silversea was being sold to RCC, by Manfredi who was going to receive consideration for such sale. However, on October 26, 2018, RCC filed Form 10-Q (Quarterly Report) with the SEC where it appears that the capital stock of Silversea was sold to RCC by an entity named Silversea Cruises Group Ltd. and not by Manfredi.

19. On July 20, 2018, the law firm of Foley & Lardner LLP ("Foley"), attorneys representing the Applicant, contacted the law firm of Skadden Arps ("Skadden"), counsel for RCC

in the acquisition of Silversea, to inform RCC of the Applicant's claims concerning ownership of Silversea.

20. A conference call was held between Foley and Skadden on July 22, 2018. During that call, Foley informed Skadden that the Applicant had sued Manfredi in Italy, that the Italian Litigation concerned, *inter alia*, a dispute over the ownership of capital stock of Silversea and the vessels that RCC was acquiring, and that the Applicant sought restitution of the shares in Silversea. Foley then sent an email to Skadden on July 22, 2018, memorializing the contents of the aforementioned call. (Annexed hereto as **Exhibit B** is a copy of Foley's email to Skadden) The Applicant received no answer from Skadden.

21. On July 31, 2018, RCC proceeded with the acquisition of 66.7% equity stake (the "Shares") in Silversea.

### The Use of Discovery in the Italian Litigation

22. The *Corte d'Appello di Bologna*, in which the Italian Litigation is pending, is a conventional civil court.

23. The Applicant has the ability to inject the requested documentation/information into the Italian Litigation even at this stage (*i.e.* appeal). While typically a court of appeals may not allow production of discovery, there are exceptions to that general principle. This matter squarely falls within the exceptions and therefore discovery is allowed here, as explained below.

24. New discovery, regardless of when the relevant documents were created or came into existence, may be introduced on appeal provided that (a) either there are new relevant facts or the decision of the *Corte di Cassazione* makes it necessary that new documents be produced, namely when the *Corte di Cassazione* annuls a decision of a court of appeals on the ground that said decision was erroneously motivated; and (b) the litigant was unable to produce or introduce

6

during the proceeding before the trial court, due to force majeure. Italian courts find the existence of force majeure when the litigant that wants to introduce new documents ignored either the existence of those new documents or the place where those new documents were located. (*See Corte di Cassazione* Decisions 17413/2003 and 13629/1992)

25. Here, we have both (a) new relevant facts (RCC's acquisition of the Shares) and (b) a decision of the *Corte d'Appello di Bologna* that was annulled on the ground that it was erroneously motivated. The Applicant also meets the second prong in that he was unable to introduce the requested documents during the proceeding before the trial court in the Italian Litigation because either said documents did not exist at that time or the Applicant was not aware of their existence.

26. The Italian Litigation was commenced in 2008 which is 10 years prior to RCC's acquisition of the Shares in Silversea. Therefore, RCC's acquisition is an intervening fact that affords the Applicant the right to produce additional discovery (in the form of documents and testimony) consisting of not only documents evidencing RCC's actual acquisition but also any document that was exchanged or produced during the course of due diligence in furtherance of RCC's acquisition. The fact that the Applicant learned of the existence or potential existence of certain documents is sufficient to confer upon him the right to introduce new discovery, regardless of when the relevant documents were created or came into existence, since here there are new intervening facts, the decision of the *Corte di Cassazione* makes it necessary that new documents be produced, and the Applicant was unable to produce during the lower court's proceeding. (*See Corte di Cassazione* Decisions 17413/2003 and 13629/1992)

27. Moreover, the *Corte di Cassazione* held that the *Corte d'Appello di Bologna* erred in its decision and its decision was erroneously motivated because it misapplied the law and

7

misinterpreted the facts and, in so doing, did not consider relevant allegations of the Applicant. (*See* Exhibit A)

28. In light of the foregoing, the Applicant has the right to introduce new documents and testimony into the Italian Litigation.

29. The discovery the Applicant seeks would inform the Italian tribunal's understanding of the nature, extent and scope of Manfredi's complex scheme to frustrate the Applicant's claims for restitution of assets, including the capital stock of Silversea, as well as his complete domination of his corporations. The documentation/information sought may demonstrate that Manfredi completely dominates his corporations, including Silversea, shuffled assets and treated Silversea and other corporate assets as his own assets in complete disregard of corporate ownership and separateness between corporate and personal assets, all in an effort to hide assets and eventually hinder enforcement of judgment against him.

30. In other words, the requested discovery will be employed to (i) establish the fictitious or complete lack of chain of ownership of the Shares which somehow ended up in Manfredi's hands or in the hands of entities controlled by Manfredi; (ii) evidence Manfredi's alleged scheme to create, dominate and dissolve entities and shuffle relevant assets (including the Shares) between and among said entities, in an effort to frustrate the Applicant's claims for restitution of the Shares; (iii) evidence the monetary value of the disputed Shares of which the Applicant seeks restitution; and (iv) support and afford the Applicant's contemplated motion against Manfredi for *sequestro conservativo*, the equivalent of an attachment of assets, in the pending Italian Litigation.

31. RCC is not a party to the Italian Litigation and, therefore, the Italian Court has no jurisdiction to compel RCC to produce documents or testimony.

8

32. The *Corte d'Appello di Bologna* would and will be receptive to the requested discovery relating to the ownership and fictitious or lack of chain of ownership of the capital stock of Silversea that ended up in Manfredi's hands over which Applicant claims ownership in the Italian Litigation, the complex scheme employed by Manfredi to obtain, by fraud, ownership of the capital stock of Silversea and then hide assets to hinder the enforcement of judgment against him.

33. Italian law does not limit the methods by which parties may obtain discovery, as long as the discovery has been obtained legally. Evidence collected through this Application may be added to the record and be taken into consideration by the *Corte d'Appello di Bologna*. Evidence obtained in the U.S. would be well received by the Italian judges for use in the Italian Litigation.

34. The *Corte d'Appello di Bologna* neither has a rule nor has issued a procedural order prohibiting the relief requested in the § 1782 application.

35. The Applicant is not attempting to circumvent foreign proof-gathering limits or other policies of Italy or the United States. The Italian courts have not denied the Applicant's access to documents or testimony that Applicant seeks through this application. To the contrary, the documents requested by the Applicant may be introduced in the Italian Litigation, in compliance with Italian law.

36. Additionally, the Applicant may use the requested discovery in support of his contemplated motion against Manfredi for *sequestro conservativo*, which is a form of attachment of assets. In order to obtain such remedy, the Applicant must identify which assets the Applicant is seeking to attach and their location.

9

37. The Applicant's discovery is narrowly tailored to issues in the Italian Litigation and is limited to the discrete and recent time period during which RCC conducted due diligence in furtherance of its acquisition of the Shares of Silversea which took place on July 31, 2018.

38. Specifically, the Applicant seeks production of documents showing ownership of the Shares, chain of ownership of the Shares, whether dividends were paid to the purported shareholders of Silversea, seller's representations to RCC with respect to ownership of the Shares, how and to whom RCC paid the purchase price of the Shares, and correspondence between RCC and Manfredi (or Manfredi's owned or controlled entity that sold the Shares to RCC) pertaining to Manfredi's dispute with the Applicant. Moreover, the Applicant may depose a corporate representative of RCC with respect to the dealings between Manfredi and RCC concerning RCC's purchase of the Shares.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 22, 2019

_____
Salvatore Patti

11